Judge CALLAHAN,
with whom Chief Judge KOZINSKI, Judge O’SCANNLAIN, Judge McKEOWN, Judge TALLMAN, Judge BYBEE, Judge BEA, Judge M. SMITH, Judge IKUTA, Judge N.R. SMITH, and Judge OWENS join, dissenting:
I dissent from our decision not to take this case en banc. The panel’s opinion reversing the district court’s denial of an injunction based on the creation of a First Amendment right to government information[1] is contrary to Supreme Court precedent,[2] is not sound, and creates a circuit split.[3] Furthermore, the opinion’s limits— information “intrinsically intertwined” with this newly recognized right — are amorphous at best, and if not vacated, will be *1104 invoked every time a state sets an execution date.[4]
My concerns are addressed in Judge Bybee’s compelling dissent. For example, he explains that the two “complementary considerations” set forth in Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (“Press-Enterprise II”), are not met.[5] Executions historically have been open to the public, but this does not mandate revealing the manufacturer of the lethal drugs. Similarly, it is a stretch to argue that the identity of the manufacturer is critical to the public discussion of the process.
Finally, the opinion’s approach to the standards for injunctive relief is problematic. It recognizes that we review the “denial of a preliminary injunction for abuse of discretion.” Alliance for the
Wild Rockies v. Cottrell, 682 F.3d 1127, 1131 (9th Cir.2011). It also states that to obtain a preliminary injunction, Wood “must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.” Winter v. Natural Res. Def. Council, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). However, the opinion then cites Towery v. Brewer, 672 F.3d 650, 657 (9th Cir.2012), for the proposition that Wood need only demonstrate that “serious questions going to the merits were raised and the balance of hardships tips sharply in [his] favor.” Opinion at page 9. This allows the panel to issue an injunction because the “balance of equities here tips sharply in Wood’s favor,” Opinion at page 23, even though the panel, in *1105 determining that Wood has raised serious questions, states that it has not decided “with certainty that a First Amendment right exists to the information Wood seeks, nor do we resolve the merits of the Plaintiffs’ underlying § 1983 claim.” Opinion at page 25. This fails to appreciate the difference between Wood’s personal interests and the “public’s” right to access, which is the issue the panel found to be “serious.” The opinion thus suggests that a defendant facing the death penalty never need show any likelihood of success on a First Amendment claim in order to obtain an injunction because the nature of his sentence inherently tips the balance of hardship in his favor.[6]
In adopting an unprecedented view of the First Amendment and labeling it “serious” (while stating that it is not deciding “with certainty” that such a right exists), the panel has erected another hurdle to carrying out valid death penalties: one that is unrelated to the defendant’s innocence or the propriety of the sentence. I fear that absent firmer guidance from the Supreme Court, it will be almost impossible for any state in the Ninth Circuit to actually carry out a constitutionally valid capital sentence. I dissent from our decision denying rehearing en banc.

.Wood claims a First Amendment right to farther information concerning: (1) the manufacturer of his lethal injection drugs; (2) the qualifications of those who will administer the execution; and (3) the documents relied upon by the state to adopt its newest execution protocol.

. See Houchins v. KQED, Inc., 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); Los Angeles Police Dep't v. United Reporting Publishing Corp., 528 U.S. 32, 40, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999).

. See Wellons v. Comm’r, Ga. Dep’t of Corr., 754 F.3d 1260 (11th Cir.2014).

. The majority’s opinion does include the following penultimate sentence:
We grant a conditional preliminary injunction, staying Wood’s execution until the State of Arizona has provided him with (a) the name and provenance of the drugs to be used in the execution and (b) the qualifications of the medical personnel, subject to the restriction that the information provided will not give the means by which the specific individuals can be identified.
Opinion at page 25-26. Even assuming that the term "provenance of the drugs’’ is understood by the parties, the second qualification is an invitation to further litigation. Arizona has already informed Wood that the medical personnel will meet the qualifications in its 2012 protocol. Opinion at page 6. Whether Arizona could provide additional information without giving "the means by which the specific individuals can be identified” seems inherently debatable. It should be noted that Arizona Revised Statute § 13-757(C) provides that "any information contained in records that would identify those persons is confidential.” Furthermore, the majority’s opinion may be read as an invitation to require courts to fashion individual disclosure orders any time a capital defendant seeks (on behalf of the public) further information concerning his execution.

. In Press-Enterprise II, the Supreme Court stated:
First, because, a “ ‘tradition of accessibility implies the favorable judgment of experiences’ ” Globe Newspaper, 457 U.S. at 605, 102 S.Ct. at 2619 (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 589, 100 S.Ct. 2814, 2834, 65 L.Ed.2d 973 (1980) (BRENNAN, J., concurring in judgment)), we have considered whether the place and process have historically been open to the press and general public.
Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. Globe Newspaper, supra, 457 U.S. at 606, 102 S.Ct. at 2619. Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly.
478 U.S. at 8-9, 106 S.Ct. 2735. Here, the State of Arizona has given a compelling reason why disclosure of the identities of both the drug manufacturer and execution personnel will cause harm to its ability to carry out its lawful judgments.

. Moreover, the panel underestimates both the State's interest and the harm to the public. First, the panel’s assertion that "Wood’s execution would likely not be delayed much, if at all, by giving him the information he seeks,” Opinion at page 24, fails to recognize that the panel’s conditions for lifting its injunction will most likely require further litigation. See supra note 4. Second, the panel fails to appreciate that the right which it finds "serious” only arises after the state sets an execution date, and accordingly, must then be litigated prior to the scheduled execution. Third, the panel fails to consider the interests of the public and the friends and relations of Wood’s victims in closure. There is a mismatch between the majority’s articulated public claim of access to information and the remedy tied to the stay of execution.